IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 23, 2013

## BRIAN WESLEY LACEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3216     Seth Norman, Judge**

_____

**No. M2012-00849-CCA-R3-PC - Filed August 28, 2013**

_____

Petitioner, Brian Wesley Lacey, appeals from the trial court's dismissal of his petition for post-conviction relief following an evidentiary hearing. Petitioner asserts he received ineffective assistance of counsel at the trial and on appeal. After a thorough review, we affirm the judgment of the trial court dismissing the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and NORMA MCGEE OGLE, J., joined.

Chelsea Nicholson, Nashville, Tennessee, for the appellant, Brian Wesley Lacey.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In *State v. Brian Wesley Lacey*, No. M2009-01914-CCA-R3-CD, 2010 WL 5625893 (Tenn. Crim. App., Dec. 10, 2010), this court affirmed Petitioner's convictions of 12 counts of rape of a child, two counts of aggravated sexual battery, and one count of sexual battery. Two of the cases were remanded for entry of corrected judgments, but the total effective sentence did not change, and the sentence of 60 years of incarceration at 100 percent was also affirmed. *Brian Wesley Lacey*, 2010 WL 5625893, at *1. A recitation of the facts from that opinion, in which Petitioner is referred to as "the defendant" is set forth below.

The convictions in this case relate to the defendant's ongoing sexual abuse of A.H. and her mentally disabled older brother, M.H., between March 1994 and September 2002. At trial, 19-year-old A.H. testified that when she was four years old, she and her brother went to live with their grandmother, Shirley Lacey, and her husband, the defendant, at their Nashville residence after A.H.'s mother and father lost custody of the children due to their alcohol abuse. When the children went to live with the Laceys, Ms. Lacey worked as a bartender five nights a week, and the defendant contributed to the family financially by performing odd jobs. The defendant was responsible for the care of the children while Ms. Lacey was at work.

A.H. recalled that shortly after she moved in with her grandmother and the defendant, the defendant forced her to place her hand inside his pants and touch his "private parts." She was four years old. On another occasion when A.H. was seven or eight years old, the defendant placed his hand inside her pants and touched her genitals while he was kissing her on the lips, neck, and chest. She stated that the defendant first penetrated her vagina with his penis when she was six years old. Thereafter, he had sex with her more than once a month. She specifically recalled that the defendant began performing oral sex on her when she was five and a half years old. Around that same time, the defendant forced the victim to perform oral sex on him for the first time. The defendant also forced her to view pornographic movies for the purpose of learning how he wanted her to perform sexual favors for him. On one occasion, the defendant performed oral sex on M.H. after A.H. refused to do so.

A.H. recalled that on one occasion, her grandmother returned home from work early and caught the defendant and A.H. in a compromising position, half-clothed in the defendant's bedroom. Following this incident, Ms. Lacey promised to divorce the defendant and make him leave the home but did not follow through on her promise. After that time, Ms. Lacey frequently asked A.H. about the sexual abuse but refused to take any action.

The abuse continued until September 2002, when the victim began menstruating and her grandmother retired. At some point, when the victim was 15 years old, she became frustrated with the defendant's controlling behavior and reported the previous sexual abuse to her best friend, who then told her own mother, Lori Smith. Ms. Smith called police, and A.H. was

-2-

removed from the Lacey home and placed in foster care, where she remained until the time of trial.

Nicole Rogers and Lori Smith confirmed A.H.'s account of first revealing the abuse, and Metropolitan Police Department Detective Gerald McShepard confirmed A.H.'s account of telling the police about the abuse. All the State's witnesses noted that A.H. had been consistent in her details regarding the abuse.

A.H.'s grandmother denied that the abuse had occurred and implied that A.H. had made the allegations because she was unhappy with their strict parenting methods. Ms. Lacey, in particular, stated that she had never considered that A.H.'s allegations might be true.

In his appellate brief, Petitioner alleges three grounds of ineffective assistance of counsel:

(1) Trial counsel failed to call Russell Hein as a witness at the trial.

(2) Appellate counsel failed to "argue the trial court's denial of the [m]otions regarding Rule 412 . . . of the *Tennessee Rules of Evidence*."

(3) Appellate counsel failed to "argue the trial court's denial of the [m]otions regarding Rule . . . 608 of the *Tennessee Rules of Evidence*."

In its order denying post-conviction relief, the trial court made a factual finding that when Russell Hein testified at the post-conviction hearing, he "did not offer any testimony which would have proven to be of any significant assistance had it been presented at trial." The trial court also made a factual finding that trial counsel "put forth her best effort in attempting to impeach the credibility of the victim by filing and arguing motions under [Tenn. R. Evid.] Rules 608 and 412." The trial court further made a factual finding that appellate counsel decided not to argue the "Rule 608 issue" on appeal because appellate counsel felt the appropriate witness had been properly cross-examined and the motion was zealously pursued. Finally, the trial court concluded in its order that, "In assessing the evidence and potential defenses against the charges, the court is of the opinion that counsel at trial and on appeal provided the petitioner with the best possible representation in this matter."

We will summarize the evidence at the post-conviction hearing which relates to the precise issues presented on appeal.

Petitioner testified that he could not recall whether he ever told his trial counsel to contact Russell Hein as a potential witness, but ultimately responded that he (Petitioner) did not believe he ever asked trial counsel "at any point during the trial to contact Mr. Russell Hein." Petitioner did not testify concerning the other two alleged instances of ineffective assistance of appellate counsel.

Trial counsel testified that she filed, pre-trial, a motion pursuant to Tennessee Rule of Evidence 412, concerning evidence of the victim's sexual behavior. The trial court ultimately denied the motion. Trial counsel testified that she was relatively certain she would have preserved the issue by making an offer of proof. However, Petitioner has not provided a reference to either this record on appeal or to the record in the direct appeal from the convictions as to any offer of proof. Trial counsel testified that she also filed a motion pursuant to Tennessee Rule of Evidence 608, pertaining to evidence of character and conduct of a witness, in which arguments and proposed evidence was presented, but the motion was denied by the trial court. According to trial counsel the Rule 608 evidence was proof that the victim "had made false statements before, false statements with regards to the incident itself, and had given a different version of what the victim eventually said at trial." At first blush, it seems this evidence would be more properly offered under Tennessee Rule of Evidence 613 as extrinsic evidence of a prior inconsistent statement of a witness, but again, Petitioner refers to nothing in this record or the record of the direct appeal pertaining to this precise issue. Trial counsel testified that she learned from her investigator that Russell Hein, the victim's uncle, was present prior to trial when the victim "recanted and said that it had not happened." Even though Russell Hein was not called as a witness, proof of the victim's recantation and other inconsistencies of her version of the events was brought to the jury's attention during the trial. Trial counsel testified,

> We offered evidence that the victim had recanted through cross-examination, and I think it was pretty well established that the victim had given multiple versions of her main account of rape, and that those versions had changed over time.

Trial counsel testified that at least some of the "Rule 412" evidence was presented to the jury during examination of a witness who did testify. She further testified that the basic part of the "Rule 608" evidence, the victim's recantation, was brought out during the trial. Notably, trial counsel testified that the victim admitted to some recantation because people were "putting pressure" on her. Although there were two additional witnesses to the victim's recantation in addition to the one witness who was called to testify, trial counsel made a strategic decision not to call them to testify because they were "flaky;" she explained they had "serious credibility issues."

Russell Hein testified that he never witnessed anything in his frequent trips to the Petitioner's home that would indicate the victim was being repeatedly sexually abused. Interestingly, during direct examination by Petitioner's counsel, the following transpired:

> Q.   Okay. But she [the victim] didn't state to you that she ever recanted or stated to you anything about this case?
>
> A.   No.

Appellate counsel testified and acknowledged that he did not present as issues on appeal the "Rule 412" or the "Rule 608" issues. When asked by Petitioner's counsel for the reason he did not present the issues, appellate counsel stated, "I just focused on what I thought was [Petitioner's] best chances on appeal." On cross-examination by the State, appellate counsel stated that he reviewed the transcript and felt the victim had been properly cross-examined about her recantations. Neither side at the post-conviction hearing elicited any further testimony specifically related to why appellate counsel had not presented the evidentiary issues on appeal.

### Analysis

In order to be granted post-conviction relief, a petitioner must prove the factual allegations supporting relief by clear and convincing evidence at an evidentiary hearing. Tenn. Code Ann. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). The trial court's factual findings in its ruling in a post-conviction proceeding "are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Appellate review of legal issues, or of mixed questions of fact and law, such as in a claim of ineffective assistance of counsel, is de novo with no presumption of correctness. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008). A petitioner must satisfy both prongs of the two-prong test to prove ineffective assistance of counsel which is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). These prongs are (1) deficient performance of counsel, defined as "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, and (2) prejudice to the defendant, defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dellinger*, 279 S.W.3d at 293. If the petitioner fails to establish either one of the prongs, that is a sufficient basis to deny relief, and the other prong does not need to be addressed. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to do an act such as call a witness, present tangible documents for evidence, and/or file a motion to suppress, among other actions, the petitioner is generally obliged to present the witness or the other evidence

at the post-conviction hearing in order to satisfy the *Strickland* prejudice prong. *See Pylant*, 263 S.W.3d at 869. In other words, it is incumbent upon a petitioner to prove that what he says trial counsel *should have done* would have had merit and produced admissible, relevant evidence.

*Trial Counsel*

Petitioner asserts that trial counsel rendered ineffective assistance of counsel by failing to call Russell Hein as a witness at trial. Russell Hein testified at the post-conviction hearing. His pertinent testimony from that hearing is set forth above. We agree completely with the post-conviction trial court's factual finding that Russell Hein "did not offer any testimony which would have proven to be of any significant assistance had it been presented at trial." Accordingly, Petitioner did not meet the first prong of the *Strickland* test: that trial counsel' performance was deficient. Petitioner is not entitled to relief on this issue.

*Appellate Counsel*

We will address both allegations of ineffective assistance of appellate counsel together. In *Carpenter v. State*, 126 S.W.3d 879 (Tenn. 2004), our supreme court stated the following regarding review of allegations of ineffective assistance by appellate counsel.

> Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. *King v. State,* 989 S.W.2d 319, 334 (Tenn.1999); *Campbell v. State,* 904 S.W.2d 594, 596-97 (Tenn. 1995). Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" *Cooper v. State,* 849 S.W.2d 744, 747 (Tenn. 1993) (quoting *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)); *see also Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. *Jones,* 463 U.S. at 751, 103 S.Ct. 3308; *King,* 989 S.W.2d at 334; *Cooper,* 849 S.W.2d at 747. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. *See Campbell,* 904 S.W.2d at 597; *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. We should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight. *See Campbell,* 904 S.W.2d at 597; *see also Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). Deference to counsel's tactical

choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases. *Campbell,* 904 S.W.2d at 597.

If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. *See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *See United States v. Dixon,* 1 F.3d 1080, 1083 (10th Cir. 1993).

*Carpenter*, 126 S.W.3d at 887.

Appellate counsel, whose testimony was implicitly accredited by the trial court following the post-conviction hearing, testified that he focused his representation on appeal on the issues he believed gave Petitioner his "best chances on appeal." Appellate counsel testified that he reviewed the trial transcript prior to drafting the appellate brief. He felt the victim had been properly cross-examined about her recantations. No other evidence was elicited from appellate counsel as to why he did not raise the evidentiary issues on appeal.

As quoted from *Carpenter*, "If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, *then the reviewing court must determine the merits of the issue. See*, e.g., *Kimmelman v. Morrison*, 477 U.S. 365 [ ] (1986)." *Carpenter*, 126 S.W.3d at 887 (emphasis added).

In order for the reviewing court to determine the merits of the omitted issue, a petitioner should present the previously omitted issue in the same form and with the same legal argument(s), that is, applying law to the facts of the case, which petitioner asserts appellate counsel should have done. It is not enough to simply state that appellate counsel should have raised certain issues on appeal and to argue that these issues could have resulted in relief being granted to the petitioner. In the case *sub judice*, Petitioner has argued in his brief that under Rule 412 and 608 of the Tennessee Rules of Evidence, the trial court's denial of Petitioner's motions should have been raised on appeal. We have carefully reviewed the arguments set forth in Petitioner's brief, mindful of the requirement in *Carpenter* that we must determine whether the omitted issues had merit. We are not persuaded that the omitted issues had any merit. Accordingly, Petitioner is not entitled to relief on this issue.

In conclusion, we affirm the judgment of the trial court denying post-conviction relief.

_____
THOMAS T. WOODALL, JUDGE